**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**TRACII PEAVY**                                                                        **PLAINTIFF**

**v.**                                                      **No.  3:15-CV-545 HTW LRA**

**UNITED STATES POSTAL SERVICE**                                **DEFENDANT**


**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Summary judgment is granted for any matter in which there is no dispute of material facts. After addressing an initial jurisdictional question, this Court must find that the Plaintiff is entitled to summary judgment on each of the three questions here.

First, the undisputed facts show that the Defendant United States Postal Service has repeatedly violated the Fair Labor Standards Act. Defendant's Answer, ¶ 43, admits that it "failed to pay or incorrectly paid Plaintiff for work performed on four instances but subsequently paid Plaintiff once corrections were made" - which violates the rule of "on time" payment articulated in *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945). Thus, on the question of whether the Postal Service violated the Act, summary judgment must be awarded to the Plaintiff.

Second, summary judgment is also appropriate on the award of liquidated damages. Such damages must be awarded unless the employer meets its "'substantial

burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Singer v. City of Waco, TX*, 324 F. 3d 813, 822-23 (5th Cir. 2003). Here, the Postal Service admits that it was aware of its FLSA obligations, and can present no good faith and reasonable grounds for thinking its actions were consisted with the law. The Postal Service asserts that each of its four repeated violations were "inadvertent." Defendant's cannot establish their burden to prove "good faith." But even if Defendants could prove good faith inadvertence, this does not establish "a *reasonable* belief that its actions did not violate the FLSA." Unintentional or not, Defendant knew that check stubs for $0 on the regular payment day violate the minimum wage laws. There is no material factual dispute that statutory liquidated damages are owed.

Third, attorney fees and costs must be awarded. The FLSA provides that "[t]he court ... shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1043-45 (5th Cir. 2010)

In sum, the Postal Service violated seven decades of law, and it did so four times, aware that it was in the wrong each time. At some point there must be consequences or else the Postal Service will keep making the same "mistakes" with impunity. For these reasons, as described herein, summary judgment on liability, damages, and attorney fees should be granted to the Plaintiff.

**STATEMENT OF RELEVANT UNDISPUTED FACTS**

Plaintiff Tracii Peavy has worked for the USPS in various capacities for many years. She is paid biweekly. Her official pay date is generally the first Friday following the final day of the pay period, which is also a Friday. Thus, for example, work during the period from March 7, 2015, to March 20, 2015 (inclusive) has a regular pay date of March 27, 2015. (Doc. 1, Complaint, ¶¶ 6-9, admitted in Doc. 4, Answer).

Undisputed Facts relating to Pay Period 12 of 2014

June 6, 2014, was the pay date for May 17, 2014, through May 30, 2014, which is pay period "12" of 2014. Ms. Peavy worked at least 54 hours during this pay period. Her pay rate during this time was at least $19.94 per hour. Ms. Peavy was paid only $10.77 total on June 6, 2014. The USPS "adjusted" her pay in pay period 16 of 2014 by $1065.99, on date August 1, 2014. (Doc. 1, Complaint, ¶¶ 11-15, admitted in Doc. 4, Answer).

Undisputed Facts relating to Pay Period 24 of 2014

November 21, 2014, was the pay date for November 1, 2014, through November 14, 2014, which is pay period "24" of 2014. Ms. Peavy worked at least 58.5 hours during this pay period. Her pay rate during this time was at least $19.94 per hour. Ms. Peavy was paid $0 on November 21, 2014. A deduction of $243.86 for health insurance attributable to this period was made. The USPS "adjusted" her pay in pay period 26 of

2014 by $1,166.49, on date December 19, 2014. In making this adjustment, USPS again deducted an additional $243.86 for health insurance applicable to this period, even though this deduction had already been made. (Doc. 1, Complaint, ¶¶ 17-23, admitted in Doc. 4, Answer). This error was also not corrected until pay period 3 of 2015, on date January 30, 2015. (Doc. 4, Answer, ¶ 23).

<u>Undisputed Facts relating to Pay Period 7 of 2015</u>

March 27, 2015, was the pay date for March 7, 2015, through March 20, 2015, which is pay period "7" of 2015. Ms. Peavy worked at least 65.5 hours during this pay period. Her pay rate during this time was at least $20.13 per hour. Ms. Peavy was paid $0 on March 27, 2015.  The USPS "adjusted" her pay in pay period 9 of 2015 by $1,318.52, on date April 24, 2015. (Doc. 1, Complaint, ¶¶ 25-28, 30, admitted in Doc. 4, Answer).

<u>Undisputed Facts relating to Pay Period 13 of 2015</u>

June 19, 2015, was the pay date for May 30, 2015, through June 12, 2015, which is pay period "13" of 2015. Ms. Peavy worked at least 61.93 hours during this pay period. Her pay rate during this time was at least $20.13 per hour. USPS payroll records indicate that a check for $1,246.65 was issued to Ms. Peavy on June 19, 2015. The check for this pay period was received on July 14, 2015. (Doc. 1, Complaint, ¶¶ 33-36, 40, admitted in Doc. 4, Answer).

## ARGUMENT

The moving party is entitled to summary judgment where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court draws all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.*

### I. Jurisdictional basis: Fifth Circuit law applies

As an initial matter, this Court must determine whether the Little Tucker Act or the Postal Reorganization Act provides the correct basis for jurisdiction here. This Court should find that the Postal Reorganization Act – not the Little Tucker Act – is applicable, and therefore the law of the Fifth Circuit applies. Although it is unclear whether the issue will be disputed, nonetheless, because it is a question of subject-matter jurisdictional significance, it should be addressed by the Court at the outset.[1]

---

1   Out of an abundance of caution, the Plaintiff cited the Little Tucker Act in addition to § 1331 as a basis for jurisdiction in its Complaint, Paragraph 4. The Defendant's Answer countered that "jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and the Fair Labor Standards Act, 29 U.S.C. § 216(b)," apparently agreeing with Plaintiff's position that the Little Tucker Act is inapplicable. However, the Department of Justice – which is counsel for the Postal Service – has taken a variety of inconsistent positions on this question. *Cf. Gonda v. Donahoe*, (D.D.C. February 11, 2015) Civ. No. 12-1772 (RMC) (taking position – rejected by the court - that the Tucker Act applies to FLSA claims against USPS); *Abbey v. United States*, 745 F. 3d 1363 (Fed. Cir. 2014) (taking position – rejected by the court – that the Tucker Act does not apply to any FLSA claims); *Martin v. United States*, (Ct. Fed. Cl. July 31, 2014) No. 13-834C, at note 5 (government counsel arguing first for transfer

The United States Postal Service – in contrast to many other governmental entities – has been specifically authorized by Congress "to sue and be sued in its official name." 39 U.S.C. § 401(1). As held by the Supreme Court, "[t]he sue-and-be-sued clause waives immunity, and makes the Postal Service amenable to suit, as well as to the incidents of judicial process." *USPS v. Flamingo Indus. (USA) Ltd.*, 540 US 736, 744 (2004). And, unlike the Sherman Act addressed in *Flamingo*, the Fair Labor Standards Act is expressly applicable to public agencies "including the United States Postal Service." 29 U.S.C. § 203(x).

In addition to waiving immunity, the statute also includes a broad grant of jurisdiction for suits against the Postal Service in *eo nomine*, stating that the United States District Courts "shall have original but not exclusive jurisdiction over *all actions* brought by or against the Postal Service." 39 U.S.C. § 409(a) (emphasis added).[2]

---

to the district courts on the grounds that the Tucker Act does not apply, then withdrawing motion); *Donovan v. USPS*, 530 F. Supp. 894, 896-97 (D.D.C. 1981) (reflecting the apparently unanimous view of the Department of Labor, the Department of Justice, the Postal Service, and the D.C. District Court that the district court was the correct forum for a massive FLSA action by Labor against the Postal Service).

When asked what position would be taken in the present matter, counsel for USPS stated that she "agree[s] with [Plaintiff] that [the Little Tucker Act] is not the appropriate basis for jurisdiction" but declined to take a position as to whether jurisdiction was appropriate under the Postal Reorganization Act, stating (correctly) that "[t]he party claiming jurisdiction bears the burden of establishing jurisdiction is proper."

Nonetheless, whatever position USPS may choose to take, as a question of subject-matter jurisdiction the matter is one that this Court is obliged to address *sua sponte*, and Plaintiff hereby presents the legal basis for jurisdiction. Although there is no choice of forum issue, since both kinds of claims can be brought in this Court, the question determines whether the appropriate governing circuit court law is that of the Fifth Circuit or of the Federal Circuit. It is also important practically speaking in that the Little Tucker Act contains a $10,000 cap on damages. Although it will not play a role in the present case – the complaint seeks less than $10,000, and the cap does not apply to attorney fee awards, *see Bywaters v. United States*, 670 F. 3d 1221 (Fed. Cir. 2012) – this is of importance as a matter of precedent.

2   The law also provides that "[t]he district courts shall have original jurisdiction of any civil action arising under

And, when Congress means to carve out an exception to this jurisdiction, it does so expressly. Thus, in the Contract Disputes Act, Congress named the Postal Service explicitly, thereby vesting exclusive jurisdiction over procurement contract matters in the Court of Claims (now the Court of Federal Claims and the Federal Circuit). *Anselma Crossing, LP v. USPS*, 637 F. 3d 238, 242-44 (3rd Cir. 2011); *see Jackson v. USPS*, 799 F. 2d 1018, 1022 (5th Cir. 1986). The Tucker Act, by contrast, cannot be said to modify the Postal Reorganization Act, 39 U.S.C. § 409(a), not only because it fails to mention the Postal Service at all, but also because the Tucker Act (of 1887) precedes the PRA (of 1970) by close to a century.

Thus the Fifth Circuit observed in *Jackson* that – in the absence of the Contract Disputes Act – "the district courts enjoyed concurrent jurisdiction over suits against USPS in *eo nomine* for breach of a USPS contract, regardless of the amount involved. 28 U.S.C. § 1339 & 39 U.S.C. § 409(a)." 799 F. 2d at 1022 (citations omitted). In the present case, where neither the Contract Disputes Act nor any other specific statute divests this Court of jurisdiction, this *status quo ante* persists, and suits may be maintained in this Court – with appeals to the Fifth Circuit – "regardless of the amount involved." *Id.; c.f. Tritz v. USPS*, 721 F. 3d 1133, 1139 (9th Cir. 2013) (holding that the Contract Disputes Act applies only to the narrow category of procurement contracts, and that harmonizing the

---

any Act of Congress relating to the postal service." 28 U.S.C. § 1339. This statute is distinct from 39 U.S.C. § 409(a) in that it applies to actions arising under laws "relating to the postal service" *regardless* of whether the Postal Service is a party to the action.

PRA and the Tucker Act requires recognizing *concurrent* jurisdiction in both the district courts and the Court of Federal Claims for other kinds of contract claims against the Postal Service, even if the amounts exceed $10,000).

This is the result correctly reached by the court in *Gonda v. Donahoe, supra.* In that case, an employee brought claims in the Federal District Court for the District of Columbia under the FLSA. The court found that it had jurisdiction of the FLSA claims, and relied on §§ 401 and 409(a) of the PRA in rejecting the Postal Service's contention that the Tucker Act was the exclusive remedy for Postal Service FLSA violations.

This is consistent with the long history of FLSA litigation against the Postal Service, which has proceeded in the district courts and the regional circuit courts largely without comment for decades.[3] This includes a case in which the Postal Service actually *requested* to be sued by the Secretary of Labor in the D.C. District Court in a matter involving much more than the Tucker Act limitations. *Donovan v. USPS*, 530 F. Supp. 894, 896-97 (D.D.C. 1981). Since subject matter jurisdiction is a prerequisite to any other decision – and must be raised *sua sponte* – an affirmative, albeit silent, finding of subject matter jurisdiction is a necessary predicate of these cases.

For these reasons, this Court should find jurisdiction under the Postal Reorganization Act 39 U.S.C. § 409(a), the Fair Labor Standards Act 29 U.S.C. § 216(b),

---

3   *See, e.g.*, *Nigg v. USPS*, 555 F. 3d 781 (9th Cir. 2009); *Dymond v. USPS*, 670 F. 2d 93 (8th Cir. 1982); *Hill v. United States*, 751 F. 2d 810 (6th Cir. 1984).

and 28 U.S.C. § 1331, and should consider the law of the Fifth Circuit (rather than the Federal Circuit) binding in this case.

## II. FLSA requires "on time" payment; unreasonably late payment violates the Act.

The obligation to pay employees on their "regular payment date" is not new. *Atlantic Co. v. Broughton*, 146 F. 2d 480, 482 (5th Cir. 1944). As the Fifth Circuit has held for seven decades, "if an employer on any ***regular payment date*** fails to pay the full amount of the minimum wages and overtime compensation due an employee, there ***immediately arises an obligation*** upon the employer to pay the employee the difference between the wages paid and the wages due, plus an equal additional amount as liquidated damages; and ***the payment thereafter of the balance due as wages, even though made prior to suit, does not release the accrued liability for liquidated damages***." *Id.* (emphases added).

The Supreme Court described this as an obligation to pay wages "on time." *Brooklyn Savings Bank v. O'Neil*, 324 US 697, 708 (1945). The Supreme Court explained the reason for the rule as follows: "failure to pay the statutory minimum ***on time*** may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." *Id.* (emphasis added, citations

omitted). An employee living on a pay-check-to-pay-check basis – like Plaintiff Tracii Peavy and the family she supports – simply cannot afford to miss a pay check. This reality was recognized by Congress and the Supreme Court: "Employees receiving less than the statutory minimum are not likely to have sufficient resources to maintain their well-being and efficiency until such sums are paid at a future date." *Id.*

The Fifth Circuit is not alone in recognizing this obligation.[4] As the Department of Labor's regulations recognize, "[t]he courts have held that a cause of action under the [FLSA] for unpaid minimum wages or unpaid overtime compensation and for liquidated damages `accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b).

For example, Judge Easterbrook wrote an opinion for the Seventh Circuit affirming the district court's grant of "summary judgment for the plaintiffs, holding that ***retaining any part of the minimum wage past the end of the pay period violates the FLSA***." *Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993) (emphasis added). There was a dispute of fact in that case as to just *how long* the wage was delayed, and whether it was paid to employees that quit part-way through the working season. The court held that this factual dispute was not material, and affirmed summary judgment. *Id.*

---

4   *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993); *Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993);
    *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960).

As the Ninth Circuit has explained, "late" payment is the same as nonpayment under the statute: "State officials urge us to distinguish between late payment and nonpayment, but offer us no principled way to make such a distinction. We cannot come up with one either." *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993).

And in *Martin v. United States, supra,* the Court of Federal Claims stated that "[t]he legal question squarely presented in this case is whether plaintiffs can recover under the FLSA for a short delay in the payment of their wages [by the government]." The answer was an unequivocal "yes." The court reaffirmed the "on time" rule articulated in *Brooklyn Savings Bank* and rejected the government's argument for an exception for short and necessary delays. (Ct. Fed. Cl. July 31, 2014) No. 13-834C.

Specifically, in *Martin* the government argued that it was unable to pay the wages on the regular payday because Congress had refused to authorize appropriations – this was during a "government shut down." The government asked the court to apply a rule of reason permitting about two weeks delay under these circumstances.

The court squarely rejected this argument and reaffirmed once again that timely payment under the FLSA means payment on the regular payday – not two weeks late – regardless of the reason: "When applying the Supreme Court's 'on time' mandate, courts have determined almost universally that an FLSA claim accrues, for limitations purposes, when an employer fails to pay workers on their regular paydays, and that a

violation of the Act also occurs on that date." *Id.*[5]

This general rule is further solidified in the extraordinarily rare case where an exception is recognized. That case is *Rogers v. City of Troy*, 148 F.3d 52 (2d Cir. 1998). In *Rogers*, the city changed its pay schedule for police officers from a weekly schedule to a lagged bi-weekly schedule. In order to ease this transition, the city altered the pay schedule to build a lag of one day each week – i.e., paying for seven days of work every eight days. After five weeks, the lag was complete and the new bi-weekly schedule set.

The Second Circuit's analysis began with the well-established rule that "'[w]hile the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities.'" *Id.* at 55 (quoting *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960)). However, the court distinguished those authorities because the employer was "***chang[ing] the pay schedule,***" and the Department of Labor's rules explicitly permitted a change in schedule under certain conditions. Relying on this regulation,[6] the court held:

> In general, the prompt payment requirement is not violated when an employer ***changes the pay schedule***, provided that the change: (a) is made for a legitimate business reason; (b) does not result in an unreasonable delay in payment; (c) is intended to be permanent; and (d) does not have the effect of evading the FLSA's substantive minimum wage or overtime requirements.

---

5   The court did not, however, decide whether liquidated damages were appropriate at that time, for reasons which will be discussed below, *infra* note 9.

6   *Id.* at 57, quoting DOL rules that such changes are permissible if "'the change is intended to be permanent and is not designed to evade the overtime compensation requirements of the Act.' 29 C.F.R. § 553.224; *see also id.* § 778.105 (same)."

*Id.* at 58 (emphasis added). Thus, in order to be acceptable, a change in pay schedule must be ***permanent****.*

*Rogers* shows quite clearly that the Postal Service violated the FLSA here. There is not a single part of the *Rogers* test which the Postal Service can pass: it was not changing Peavy's pay schedule; it had no legitimate business reason for withholding payment; the delay in payment was ***up to ten weeks*** (rather than one day as in *Rogers*);[7] it was not intended to be a permanent change in schedule; and it had the effect of evading the substantive requirements of the FLSA. No law or regulation gives the Postal Service authority to withhold minimum wages from an employee for a period of four to ten weeks without cause.

For the foregoing reasons, this Court must find that there is no material dispute of fact that the Defendant violated the FLSA on four separate occasions.

**III. Liquidated damages must be ordered because as a matter of law the Postal Service cannot meet its "substantial burden of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA."**

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or section 207 . . . ***shall be liable*** . . . in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added). "The duty of the court to award liquidated damages in an amount equal to the unpaid wages due under sections 206

---

7   The shortest "delay" at issue in the present case was four weeks, and the longest was ten weeks.

and 207 of the FLSA are ministerial, not discretionary, under the terms of section 216."
*Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414-15 (5th Cir. 1990).

There is only one exception under which the court may, at its discretion, decide to award a lesser or no liquidated damages – Section 260:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 . . . .

Thus, although liquidated damages are no longer completely automatic, as they were at the time of *Brooklyn Savings Bank*,  the Postal Service bears a "'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Singer v. City of Waco, TX*, 324 F. 3d 813, 822-23 (5th Cir. 2003) (citation omitted).

This is a dual burden: the Postal Service must prove that its actions were "*both* in good faith *and* reasonable." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414-15 (5th Cir. 1990) (emphasis in original). If it fails either test, the award of liquidated damages is mandatory. *Id.* In addition, "even if the district court determines that the employer's actions were in good faith and based on reasonable grounds," the court still has "discretion to award liquidated damages." *Lee v. Coahoma County, Miss.*, 937 F.2d 220, 227 (5th Cir. 1991).

**A. There is no material dispute of fact that Defendant cannot prove good faith.**

Given the undisputed facts here, the Postal Service cannot prove the first element of its defense: good faith. This is so for three reasons:

First, if the Postal Service had been acting in good faith it would not have repeated its "mistake" four times in a year. After the initial so-called "mistake" in June 2014 was brought to the Postal Service's attention, it should have taken steps to prevent the mistake from recurring. It did not. It then immediately repeated the "mistake" in November 2014. And another "mistake" in March 2015, and another in June 2015. Once might be a mistake, twice a coincidence, but when we have a third and fourth violation the facts are inconsistent with good faith.

Second, the Postal Service failed to cure its errors in a timely fashion. Each violation could have been cured in no more than two weeks – at the next pay period. Instead, the Postal Service took eight weeks to cure the first violation, ten weeks to completely cure the second violation, and four weeks to cure each of the third and fourth violations. This cannot be reconciled with good faith.

Third, even assuming for the sake of argument that the Postal Service could prove that Plaintiff's payroll on these four instances was somehow different and unusually complicated for some reason, and that there was no way to cure it within two weeks, there is a simple expedient by which the Postal Service could have avoided violating the law: simply pay Plaintiff *something* on her pay date, and correct it later. The

correct action to take here, in the absence of a final timecard, is to issue a pay check

based on a reasonable estimate, assuming she worked at least her regular schedule, and

provide corrections in the next pay period.

This would allow Ms. Peavy to get paid statutory wage on time, and would not

place on the innocent employee the burden of bearing the consequences of the

government's delay in administering her payroll. Because corrections either way can be

issued in future paychecks – as the facts show – there is no good faith grounds for

erring against the employee and thereby refusing to pay minimum wages on time.

In sum, the Postal Service can point to no factual basis in its pleadings or other

documents to claim that these "mistakes" were in good faith. Nor can there be. The

Postal Service has no excuse for a $0 paystub on the scheduled payday.

### B. The Postal Service cannot prove "a reasonable belief that its actions did not violate the FLSA."

Nonetheless, even assuming good faith, the Postal Service cannot establish the

second element: that it had a "a reasonable belief that its actions did not violate the

FLSA." The Fifth Circuit has described it thusly: "[s]tated most simply, we think the test

should be: Did the employer know the FLSA was in the picture?" *Coleman v. Jiffy June

Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1971). And here, the "Defendant admits it is

aware of its FLSA obligations" (Answer ¶ 10) – as it must, since it is a governmental

employer with the benefit of sophisticated legal advice and payroll infrastructure.

The Postal Service was therefore aware, at the time of its actions here, that the Fifth Circuit requires payment on the "regular payment date" under *Atlantic Co. v. Broughton*; it was aware that the Supreme Court requires "on time" payment under *Brooklyn Saving Bank*; it was aware of the strict limits placed on any exceptions to this rule in *Rogers*; it was aware of *Biggs*, of *Klinghoeffer*, of *Calderon*; and it was aware as of July 2014 that the Court of Federal Claims in *Martin* had definitively rejected its argument for a rule of reason covering minor delays.[8]

For this reason, regardless of good faith or inadvertence, there can be no "reasonable belief that its actions did not violate the FLSA." Clearly, the FLSA was "in the picture." Liquidated damages are therefore mandatory under the statute.

\* \* \*

The Postal Service caused Ms. Peavy to suffer the consequences of its payroll "mistakes," and to do so not once, but four separate times over the course of about a year, all the while in full knowledge of its obligations under Fifth Circuit and Supreme Court precedent. Nor did it correct its errors at the first opportunity, but allowed them

---

8   Again, the court in *Martin* was unequivocal in holding that a two-week delay was a violation of the FLSA. However, at that time the court did not address whether liquidated damages were appropriate. For obvious reasons, the government's Section 260 argument in *Martin* is much stronger than in the present case. Specifically, in *Martin* the government was actually "shut down" on the regular pay day. This is without question a much stronger factual basis for arguing good faith in the failure to pay on that day than is present in the current case. This is also much stronger legal grounds for a *sui generis* exception to the rule of "on time" payment. Indeed, arguably the government was prohibited by the Antideficiencies Act (and related laws) from paying employees on that day, and the government may have been reasonable, albeit wrong, in thinking that a narrow exception to the rule of *Brooklyn Savings Bank* may be justified to harmonize these conflicting legal obligations. As such, it remains to be seen whether the court in *Martin* will hereafter decide that it has discretion not to award liquidated damages under these unique circumstances.

to languish through as many as ten additional weeks. By its course of conduct, the Defendant has made it clear that it will continue to treat Ms. Peavy this way indefinitely unless and until this Court takes action sufficient to stop it.

As Congress knew, a person like Ms. Peavy is "not likely to have sufficient resources to maintain [her] well-being and efficiency until such sums are paid at a future date" - whether four, eight, or ten weeks later; she needs her paycheck "on time." *Brooklyn Savings Bank*, *supra*. Liquidated damages are designed precisely for cases like this, as "compensation for the **retention of a workman's pay** which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Id.* (emphasis added). For these reasons, summary judgment should be entered in favor of the Plaintiff regarding the Postal Service's Second Affirmative Defense, and an award of statutory liquidated damages entered.

## IV. Attorney fees are awarded to the prevailing plaintiff.

The statute provides that "the court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1043-45 (5th Cir. 2010); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 n. 7 (5th Cir. 2006).

As the Fifth Circuit has recently observed, "[s]uccess is not measured merely

based on the recovery of monetary damages, as 'a civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards.'" *Norsworthy v. Nguyen Consulting & Servs., Inc.*, ___ Fed. Appx. ___, 2014 WL 3338795, at *1 (5th Cir. July 9, 2014) (per curiam) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). "Indeed, we have previously observed that while an attorney's fee award of $56,000 on an $8,000 judgment [in an FLSA case] required more explanation from the district court, such an award was not necessarily unreasonable. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010)." *Id.*

Without litigation having been brought in this case, it is likely that the violation already repeated four times against Ms. Peavy would be repeated again indefinitely. In addition, unless reasonable attorney fees are available here, there will be little incentive to enforce the statute, and Postal Service will see no reason to implement new policies to prevent similar violations against the thousands of other Postal Service employees who depend on timely payments for survival. It is for precisely these reasons that Congress enacted a fee-shifting provision in the Fair Labor Standards Act. Minimum wage claims will, by necessity, very often be small claims by indigent persons; meaningful access to justice requires attorney's fees in this kind of case.

For these reasons, reasonable attorney fees and costs must be awarded.

**CONCLUSION**

For the foregoing reasons, summary judgment should be granted in favor of the Plaintiff, declaring that Defendant has violated the law on four occasions, and finding the Defendant liable for liquidated damages plus reasonable attorney's fees and costs, in an amount to be determined, and such other relief as this Court deems proper.

Respectfully submitted,

/s/ Joel Dillard
Joel Dillard (#104202)
Joel F. Dillard, P.A.
405 Tombigbee St.
Jackson, MS 39201
Ph: 601-487-7369
Fax: 601-487-1110
email: joel@joeldillard.com
*Attorney for Plaintiff*

**Certificate of Service**

I hereby certify that on January 6, 2016, I electronically filed the foregoing with

the Clerk of the Court using the ECF system which sent notification of such filing to the

following:

Kristi Johnson
Assistant United States Attorney
Counsel for Defendant Postal Service
Kristi.Johnson2@usdoj.gov


Date: January 6, 2016                    /s/ Joel Dillard
                                         JOEL DILLARD